IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARIANO C. CASINO, an individual; ESTELITA B. CASINO, an individual, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| BANK OF AMERICA, a Business Entity, form unknown; FIRST MAGNUS FINANCIAL CORPORATION, a Business Entity, form unknown; FIDELITY NATIONAL TITLE CORPORATION, a Business Entity, form unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, a Business Entity, form unknown; and DOES 1-100 inclusive, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

CIVIL NO. 10-00728 SOM/BMK

ORDER GRANTING DEFENDANTS
BANK OF AMERICA, N.A., AND
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.'S
MOTION TO DISMISS AND
PARTIALLY DISMISSING CLAIMS
AGAINST NONMOVING DEFENDANTS
SUA SPONTE

ORDER GRANTING DEFENDANTS BANK OF AMERICA, N.A.,
AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S
MOTION TO DISMISS AND PARTIALLY DISMISSING CLAIMS
AGAINST NONMOVING DEFENDANTS SUA SPONTE

I.      INTRODUCTION.

        Plaintiffs Mariano and Estelita Casino assert federal

and state law claims against several entities that participated

in the origination, settlement, and servicing of their mortgage

and loan, including Defendants Bank of America, N.A. ("Bank of

America"), First Magnus Financial Corporation ("First Magnus"),

Fidelity National Title Corporation ("Fidelity"), and Mortgage

Electronic Registration Systems, Inc. ("MERS").  The transaction

occurred in May 2007.

Bank of America and MERS now seek dismissal of all counts. For the reasons set forth in this order, the court GRANTS the motion and dismisses the Complaint with leave to amend as to certain counts. Given obvious pleading defects applicable to all Defendants, the court also grants dismissal <u>sua</u> <u>sponte</u> as to the majority of claims against the other Defendants.

II.    <u>FACTUAL BACKGROUND.</u>

The Casinos allege that they obtained a loan from First Magnus for $1,000,000 on or about May 2, 2007. Compl. ¶ 3, ECF No. 1. Plaintiffs allege that this transaction refinanced a piece of property in Kailua Kona, Hawaii, and that they pledged the subject property as security. Compl. ¶¶ 2, 4-5.

The Casinos allege that the interest rate they received was higher than the average 30-year fixed rate at that time. Compl. ¶ 5. They allege that they paid a "Loan Discount Fee" of $2,500 and an "egregious" origination fee of $10,000. Compl. ¶¶ 5, 20, 28. The Complaint is not entirely clear, but appears to allege that the property is in foreclosure proceedings. Compl. ¶ 40.

The Casinos recite, in general terms,[1] that mortgage brokers and lenders have engaged in predatory lending practices and that their loan was in fact a predatory lending transaction. See, e.g., Compl. ¶¶ 18-19, 35-36.  The Casinos allege that "[e]ach subsequent Defendant who has participated in, been assigned or been transferred Rights, or holds a position or interest under loan agreement [sic] . . . failed to perform their due diligence in investigation [sic] the legal requirements that this loan should have been processed within."  Compl. ¶ 20 at 6:16-21.

The Complaint asserts that the loan terms were "not clear or conspicuous, nor consistent, and are illegal, and include, for example, extremely high ratios with respect to Plaintiff's Income and Liabilities."  Compl. ¶ 21.  The Complaint alleges that First Magnus, Fidelity, and MERS failed to verify the Casinos' prior or current income or their employment.  Compl. ¶¶ 23, 27.  The Complaint asserts that the terms of the loan were such that the Casinos "can never realistically repay the loan," and that Defendants knowingly made it impossible for the Casinos to ever own the subject property free and clear.  Compl. ¶ 21 at

---

[1]In fact, this Complaint appears to be nearly identical in form to several other complaints filed by pro se plaintiffs in this court, all asserting the same twelve causes of action and attaching a "Forensic Audit Report" by Francha Services, LLC. See Asao v. Citi Mortgage, Inc., Civ. No. 10-00553 SOM/KSC (D. Haw. Apr. 28, 2011) (citing several identical complaints).

7:1-2; <u>see also</u> Compl. ¶¶ 25, 29.  The Complaint further alleges that Defendants failed to explain the "workings" of the mortgage transaction to the Casinos.  Compl. ¶ 26.

The Complaint appears to allege both that First Magnus gave the Casinos a higher interest rate than they should have qualified for, but also that they could not have qualified for the loan at all if First Magnus had employed proper underwriting standards.  <u>Compare</u> Compl. ¶ 22 ("FIRST [Magnus] placed Plaintiffs into a loan that had a significantly higher interest rate than what was qualified for") <u>with</u> Compl. ¶¶ 24, 31-32 ("Plaintiffs should have been declined for this loan").

According to the Complaint, Defendants violated the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667, by failing to issue to the Casinos TILA initial disclosures, a correct payment schedule, their proper interest rate, an accurate Good Faith Estimate, a disclosure relating to Property/Hazard Insurance, or a "CHARM booklet."  Compl. ¶¶ 57-58.  The Casinos allege that materials were not provided in their native language. Compl. ¶ 61.  The Casinos also allege that they did not receive a "Special Information Booklet" explaining the loan's settlement costs, in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617.  Compl. ¶ 71.

The Complaint asserts eleven causes of action against all Defendants: (1) declaratory relief; (2) injunctive relief;

4

(3) breach of implied covenant of good faith and fair dealing;
(4) violations of TILA; (5) violations of RESPA; (6) rescission;
(7) unfair and deceptive business practices; (8) breach of
fiduciary duty; (9) unconscionability; (10) predatory lending;
and (11) quiet title. Compl. ¶¶ 39-109. The Complaint also
asserts as a twelfth cause of action, solely against MERS, "Lack
of Standing; Improper Fictitious Entity." Compl. ¶¶ 110-17. The
Casinos seek declaratory relief, an injunction enjoining
foreclosure, quiet title, rescission of the loan, damages, and
attorney's fees. Compl. p.25.

On February 14, 2011, Bank of America and MERS filed a
motion to dismiss. ECF No. 9. Although the Casinos filed their
Complaint pro se, they subsequently obtained counsel, who
prepared their brief opposing the motion to dismiss. See ECF No.
23. Neither Fidelity nor First Magnus has entered an appearance
in this case.

III.     STANDARD.

Rule 12(b)(6) of the Federal Rules of Civil Procedure
provides for dismissal of a complaint, or a claim therein, when a
claimant fails "to state a claim upon which relief can be
granted." Dismissal under Rule 12(b)(6) may be based on either:
(1) lack of a cognizable legal theory; or (2) insufficient facts
under a cognizable legal theory. Balistreri v. Pacifica Police
Dep't, 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v.

Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" That is, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007); see Evanns v. AT&T Corp., 229 F.3d 837, 839 (9th Cir. 2000).

Under Rule 12(b)(6), the court's review is generally limited to the contents of the complaint. See Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. See Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005). Conclusory allegations and unwarranted inferences, however, are insufficient to defeat a motion to dismiss. See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004).

In particular, the court should "identify[] pleadings that, because they are no more than conclusions, are not entitled

to the assumption of truth." <u>Iqbal</u>, 129 S. Ct. at 1950.  The

court should disregard "[t]hreadbare recitals of the elements of

a cause of action, supported by mere conclusory statements." <u>Id.</u>

at 1949.  After eliminating such unsupported legal conclusions,

the court must identify "well-pleaded factual allegations," which

are assumed to be true, "and then determine whether they

plausibly give rise to an entitlement to relief." <u>Id.</u> at 1950.

IV.     <u>ANALYSIS.</u>

Bank of America and MERS raise a myriad of challenges

to the Complaint.  They argue that the Complaint fails to

identify sufficiently specific allegations against them, that the

allegations allege fraudulent conduct without sufficient

particularity, and that each of the twelve causes of action fails

for various reasons.[2]  <u>See generally</u> Mem. Supp. Mot. ("Mot.") at

6-38, ECF No. 9-1.  The court first addresses the global attacks

on the Complaint, then turns to the arguments as to each specific

Count.  Because of the similarity between the Complaints, and the

respective Defendants' motions to dismiss, portions of the

---

[2] The Complaint also mentions the Equal Opportunity Credit
Act, Compl. ¶ 12; the "Fair Lending/Fair Debt Collection Act,"
<u>id.</u>; and the Federal Trade Commission Act, <u>id.</u> ¶ 37.  The
Casinos, however, assert no claims for relief (i.e., no Counts)
for any alleged violations of those federal laws.  The Complaint
as written fails to state a claim for violations of those
statutes. <u>Cf.</u> <u>Bautista v. Los Angeles Cnty.</u>, 216 F.3d 837, 840-41
(9th Cir. 2000) ("Courts have required separate counts where
multiple claims are asserted, where they arise out of separate
transactions or occurrences, and where separate statements will
facilitate a clear presentation.") (citations omitted).

court's analysis here draw heavily from its analysis in <u>Asao</u>.
<u>See</u> Order Granting Def. Island Title Corp.'s Mot. Dismiss Compl.,
Dismissing All Claims Against All Defs., & Granting Leave to
Amend Certain Claims, ECF No. 50, Civ. No. 10-00553 SOM/KSC (D.
Haw. Apr. 28, 2011).

> A.   Specificity of Allegations Against Bank of America
>      and MERS.

Rule 8(a) of the Federal Rules of Civil Procedure
mandates a "short and plain statement of the claim showing that
the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).
This rule requires that "allegations in a complaint or
counterclaim must be sufficiently detailed to give fair notice to
the opposing party of the nature of the claim so that the party
may effectively defend against it." <u>Starr v. Baca</u>, 633 F.3d
1191, 1204 (9th Cir. 2011).  Failure to draft a complaint that
complies with Rule 8 is grounds for dismissal under Rule 41(b) of
the Federal Rules of Civil Procedure.  <u>See</u> <u>Nevijel v. N. Coast
Life Ins. Co.</u>, 651 F.2d 671, 673 (9th Cir. 1981).

Bank of America and MERS argue that the allegations
against them should be dismissed because the Complaint fails to
allege specific wrongdoing by either Defendant.  Mot. at 6-8.
The court agrees that the Complaint largely lacks specificity.
Bank of America is not described at all in the "Parties" section
of the Complaint, and the Complaint primarily relies on general
allegations regarding wrongdoing by "Defendants," rather than

naming specific actions undertaken by Bank of America and MERS (although MERS is mentioned by name in a few places). <u>See, e.g.</u>, Compl. ¶¶ 6-9 (describing all named Defendants except Bank of America), 12 (alleging generally that "Defendants . . . failed to provide the requisite Federal forms and disclosures"), 20 (alleging that "[e]ach subsequent Defendant who has participated in, been assigned or been transferred Rights, or holds a position or interest under loan agreement, including . . . MERS . . . failed to perform their due diligence in investigat[ing] the legal requirements that this loan should have been processed within"), 26 (alleging generally that Defendants failed to explain the loan), 27 (alleging that Defendants, including MERS, failed to verify the Casinos' income).

However, the court is also aware that the Casinos were acting <u>pro se</u> at the time they filed the Complaint. <u>See</u> ECF No. 1. Moreover, it appears from Bank of America and MERS's motion to dismiss that they were able to sufficiently respond to the Complaint as drafted. Therefore, the court does not rely on Rule 8 in this dismissal order. However, the court counsels the Casinos to ensure that any Amended Complaint they may file names, as specifically as they are able, the wrongdoing they allege on the part of each Defendant. A complaint that fails to explain which allegations are relevant to which defendants is confusing. This, in turn, "impose[s] unfair burdens on litigants and judges"

because it requires both to waste time formulating their own best guess of what the plaintiff may or may not have meant to assert, risking substantial confusion if their understanding is not equivalent to plaintiff's.  <u>See</u> <u>McHenry v. Renne</u>, 84 F.3d 1172, 1179-80 (9th Cir. 1996).

     B.   <u>Whether the Complaint Alleges Fraud.</u>

Bank of America and MERS argue that the court should strip the Complaint of averments of fraud because the Complaint does not meet the particularity requirement of Rule 9(b) of Federal Rules of Civil Procedure.  <u>See</u> Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  They argue that, because multiple Defendants are involved, the Complaint is deficient; that is, it does not identify each Defendant's separate role in a fraudulent scheme and fails to give each Defendant notice of particular misconduct.  <u>See</u> Mot. at 8-9.  <u>See also</u> <u>Moore v. Kayport Package Express, Inc.</u>, 885 F.2d 531, 540 (9th Cir. 1989) (stating that Rule 9(b) requires a plaintiff to attribute particular fraudulent statements or acts to individual defendants).  In short, Bank of America and MERS argue that the Complaint fails to explain the "who, what, when, where, and how of the misconduct alleged." <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1124 (9th Cir. 2009).

Although these arguments regarding lack of particularity might be correct, the Casinos have not asserted a separate claim for fraud. There simply is no fraud claim for the court to dismiss. The Complaint does touch on fraudulent conduct in various counts (e.g., Count I, Compl. ¶ 40 ("fraudulent loan transaction"); Count III, Compl. ¶ 54 ("Defendants' actions in this matter have been . . . fraudulent"); Count IV, Compl. ¶ 65 (same)). It does not, however, contain a Count asserting a state aw claim for fraud, and it is unclear whether the Casinos are even seeking relief based on common law fraud. The court therefore declines as a general matter to strip all "averments of fraud" from the Complaint. Each Count stands or falls on its own; if particularity is required for a specific Count, the court will address that requirement in the context of that Count.

C.    Counts I and II (Declaratory and Injunctive Relief).

Bank of America and MERS contend that Count I (Declaratory Relief) and Count II (Injunctive Relief), as pled, fail to state claims upon which relief can be granted because the claims are remedies, not independent causes of action. The court agrees that these Counts fail to state a claim. Mot. at 9-13.

Count I appears to seek relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.[3] Count I alleges that "[a]n

_____

[3]The Declaratory Judgment Act provides in pertinent part:

11

actual controversy has arisen and now exists between Plaintiffs
and Defendants regarding their respective rights and duties, in
that Plaintiffs contends [sic] that Defendants did not have the
right to foreclose on the Subject Property." Compl. ¶ 40. The
Casinos ask the court to declare that "the purported power of
sale contained in the Loan [is] of no force and effect at this
time" because of "numerous violations of State and Federal laws
designed to protect borrowers." Id. ¶ 41. The Complaint alleges
that, "[a]s a result of the Defendants' actions, Plaintiffs have
suffered damages . . . and seeks [sic] declaratory relief that
Defendants' purported power of sale is void." Id. ¶ 42.

    As pled, the Casinos' declaratory relief claim is not
cognizable as an independent cause of action. See Seattle
Audubon Soc'y v. Moseley, 80 F.3d 1401, 1405 (9th Cir. 1996) ("A
declaratory judgment offers a means by which rights and
obligations may be adjudicated in cases brought by any interested
party involving an actual controversy that has not reached a
stage at which either party may seek a coercive remedy and in

---

        a) In a case of actual controversy within its
        jurisdiction . . . any court of the United States, upon
        the filing of an appropriate pleading, may declare the
        rights and other legal relations of any interested
        party seeking such declaration, whether or not further
        relief is or could be sought.  Any such declaration
        shall have the force and effect of a final judgment or
        decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

cases where a party who could sue for coercive relief has not yet done so.") (citation and quotation marks omitted).  That is, because the Casinos' claims are based on allegations regarding Defendants' past wrongs, a claim under the Declaratory Judgment Act is improper and essentially duplicates the other causes of action.  See, e.g., Ballard v. Chase Bank USA, N.A., 2010 WL 5114952, at *8 (S.D. Cal. Dec. 9, 2010) ("A claim for declaratory relief 'rises or falls with [the] other claims.'") (altaration in original, citation omitted); Ruiz v. Mortg. Elec. Registration Sys., Inc., 2009 WL 2390824, at *6 (E.D. Cal. Aug. 3, 2009) (dismissing claim for declaratory judgment when foreclosure had already occurred and the plaintiff was seeking "to redress past wrongs"); Edejer v. DHI Mortg. Co., 2009 WL 1684714, at *11 (N.D. Cal. June 12, 2009) ("Plaintiff's declaratory relief cause of action fails because she seeks to redress past wrongs rather than a declaration as to future rights."); Mangindin v. Washington Mut. Bank, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action.").

     With respect to Count II, the court follows the well-settled rule that a claim for "injunctive relief" standing alone is not a cause of action.  See, e.g., Jensen v. Quality Loan Serv. Corp., 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of

action") (quotation marks and citation omitted); Henke v. Arco Midcon, L.L.C., 2010 WL 4513301, at *6 (E.D. Mo. Nov. 2, 2010) ("Injunctive relief, however, is a remedy, not an independent cause of action."); Plan Pros, Inc. v. Zych, 2009 WL 928867, at *2 (D. Neb. Mar. 31, 2009) ("no independent cause of action for injunction exists"); Motley v. Homecomings Fin., LLC, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (same). Injunctive relief may be available if the Casinos are entitled to such a remedy on an independent cause of action.

Accordingly, the court DISMISSES Counts I and II without leave to amend. If the Casinos eventually prevail on an independent claim, the court will necessarily render a judgment setting forth (i.e., "declaring") as much and providing appropriate remedies. Similarly, if injunctive relief is proper, it will be because the Casinos prevail (or have met the necessary test for such relief under Rule 65 of the Federal Rules of Civil Procedure) on an independent cause of action. Although only two Defendants have moved to dismiss, this dismissal is as to all Defendants because the Casinos cannot prevail on these Counts as to any Defendant. See Omar v. Sea-Land Serv. Inc., 813 F.2d 986, 991 (9th Cir. 1987).

D. Count III (Covenant of Good Faith and Fair Dealing).

Count III asserts a "Contractual Breach of Implied Covenant of Good Faith and Fair Dealing." The Casinos allege

that every contract imposes a duty of good faith and fair dealing "in its performance and its enforcement," Compl. ¶ 49, and that "Defendants willfully breached their implied covenant of good faith and fair dealing" by engaging in the acts alleged in the Complaint (such as withholding disclosures or information, and "willfully plac[ing] Plaintiffs in a loan that he [sic] did not qualify for"). Id. ¶ 52.

This claim in essence asserts the tort of "bad faith." See Best Place, Inc. v. Penn Am. Ins. Co., 82 Haw. 120, 128, 920 P.2d 334, 342 (1996) (adopting tort of bad faith for breach of implied covenant of good faith and fair dealing in an insurance contract). Although bad faith is an accepted tort when a plaintiff is a party to an insurance contract, the tort has not been recognized in Hawaii based on a mortgage loan contract.

Moreover, although commercial contracts for sale of goods also require good faith in their performance and enforcement, this obligation does not create an independent cause of action. See Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A., 459 F. Supp. 2d 1028, 1037-38 (D. Haw. 2006). Hawaii courts have noted that "[o]ther jurisdictions recognizing the tort of bad faith . . . limit such claims to the insurance context or situations involving special relationships characterized by elements of fiduciary responsibility, public interest, and adhesion." Id. at 1037 (quoting Francis v. Lee

Enters., 89 Haw. 234, 238, 971 P.2d 707, 711 (1999)).  The
Casinos thus do not properly plead an independent claim of bad
faith.

Importantly, even assuming a bad faith tort exists
outside the insurance context, "[a] party cannot breach the
covenant of good faith and fair dealing before a contract is
formed."  Contreras v. Master Fin., Inc., 2011 WL 32513, at *3
(D. Nev. Jan. 4, 2011) (citing Indep. Order of Foresters v.
Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 941 (2d Cir. 1998)
("[A]n implied covenant relates only to the performance under an
extant contract, and not to any pre-contract conduct.")).  Hawaii
follows this distinction.  See Young v. Allstate Ins. Co., 119
Haw. 403, 427, 198 P.3d 666, 690 (2008) (indicating that the
covenant of good faith does not extend to activities occurring
before consummation of an insurance contract).

All of Count III's allegations concern precontract
activities (failing to disclose terms, failing to conduct proper
underwriting, and making an improper loan).  Defendants cannot be
liable for breaching a contract covenant when no contract
existed.  See id.; see also Larson v. Homecomings Fin., LLC, 680
F. Supp. 2d 1230, 1237 (D. Nev. 2009) ("Because Plaintiffs' claim
revolves entirely around alleged misrepresentations made before
the [mortgage loan] contract was entered into, [the bad faith
claim] fails as a matter of law.").

Even if the Casinos were attempting to assert bad faith in the performance of a contractual right to foreclose, "a court should not conclude that a foreclosure conducted in accordance with the terms of a deed of trust constitutes a breach of the implied covenant of good faith and fair dealing." <u>Davenport v. Litton Loan Servicing, LP</u>, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010) (citation omitted). "The covenant [of good faith] does not 'impose any affirmative duty of moderation in the enforcement of legal rights.'" <u>Id.</u> (quoting <u>Price v. Wells Fargo Bank</u>, 261 Cal. Rptr. 735, 742 (Cal. Ct. App.), <u>modified on denial of reh'g</u>, 261 Cal. Rptr. 735 (Cal. Ct. App. 1989)).

Accordingly, Count III is DISMISSED. Because further amendment would be futile, dismissal of Count III is without leave to amend. This dismissal is as to all Defendants. <u>See</u> <u>Omar</u>, 813 F.2d at 991.

E.   <u>Count IV (TILA).</u>

Alleging that Defendants violated TILA in issuing the mortgage and loan, the Casinos seek rescission and damages. <u>See</u> Compl. ¶¶ 55-65, 74. As explained below, the court concludes that the Casinos' TILA rescission claim is subject to dismissal as to all Defendants because the Casinos lack a timely rescissionary remedy for any asserted violations of TILA (and are precluded from asserting any right to equitable tolling). <u>See</u> 15 U.S.C. § 1635(a). The Casinos' TILA damages claim is subject to

17

dismissal as to Bank of America and MERS because their motion to dismiss challenges the Complaint on statute of limitations grounds and the Casinos fail to plausibly argue that equitable tolling may apply. 15 U.S.C. § 1640(a); <u>Hubbard v. Fidelity Fed. Bank</u>, 91 F.3d 75, 79 (9th Cir. 1996). However, because First Magnus is not a moving party and has not sought to assert the affirmative defense of statute of limitations, the court declines to dismiss the Casinos' TILA damages claim <u>sua sponte</u> as to First Magnus. Finally, the damages claim is subject to dismissal as to Fidelity because, as an escrow agent, it is not liable for TILA violations. <u>Manuel v. Discovery Home Loans, LLC</u>, 2010 WL 2889510, at *3 (N.D. Cal. July 22, 2010).

Under TILA, borrowers have the right to rescind certain credit transactions in which the lender retains a security interest in the borrower's principal dwelling. 15 U.S.C. § 1635(a).[4] The borrower has the right to rescind the transaction for three business days following the later of the date of the transaction's consummation or the date of the delivery of the information, rescission forms, and material disclosures required by TILA. <u>Id.</u> If the required information, rescission forms, or material disclosures are not delivered by

---

[4]The Casinos allege that the loan was for the purpose of refinancing their home. Compl. ¶ 4. Refinance transactions are subject to a right of rescission under TILA. <u>See, e.g.</u>, <u>Jones v. E*Trade Mortg. Corp.</u>, 397 F.3d 810 (9th Cir. 2005).

18

the creditor, the right to rescind expires three years after the transaction's consummation.  Id. § 1635(f); King v. Cal., 784 F.2d 910, 915 (9th Cir. 1986).  The statute of limitations applicable to TILA rescission is not subject to equitable tolling.  See Beach v. Ocwen Fed. Bank, 523 U.S. 410, 411-13 (1998).

Pursuant to the statute and Regulation Z, 12 C.F.R. Pt. 226, a borrower may exercise the right to rescind by notifying the creditor of his intention to do so.  See 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23.

In this case, the Casinos allege that the transaction was consummated "on or about" May 2, 2007.  See Compl. ¶ 3.  Even assuming the Casinos were entitled to the extended rescission period, their time to rescind the loan expired three years from that date, in May 2010.  The Casinos did not file their Complaint seeking rescission until December 2010.  Because more than three years have passed, the Casinos cannot rescind their loan.[5]

---

[5]The Casinos oppose the motion to dismiss by arguing that they "may be able to show they requested rescission" "[o]nce discovery is completed."  See Mem. Opp. Mot. Dismiss ("Opp.") at 22 (requesting to take discovery under Federal Rule of Civil Procedure 56(d)), ECF No. 23.  However, on a motion to dismiss, the court is bound by Iqbal and Twombly, not Rule 56.  There are no facts suggesting the Casinos sought to rescind at any time prior to the filing of the Complaint, and any attempt by the Casinos to rescind earlier is within their knowledge and does not require discovery.

The Casinos' damage remedy under TILA is also time-barred as to Bank of America and MERS. A TILA plaintiff may seek actual damages for a lender's failure to provide proper disclosures. See 15 U.S.C. § 1640(a). Under 15 U.S.C. § 1640(e), however, an action for damages by a private individual must be instituted "within one year from the date of the occurrence of the violation." The Ninth Circuit has interpreted this to mean that the limitations period for a damage claim based on allegedly omitted or inaccurate disclosures begins on "the date of consummation of the transaction." King, 784 F.2d at 915; see also Hubbard, 91 F.3d at 79 (holding that when a lender fails to comply with TILA's initial disclosure requirements, a borrower has one year from obtaining the loan to file suit). To the extent the Casinos seek money damages for TILA violations arising out of the May 2007 loan, those claims are barred by the one-year statute of limitation, as the Casinos did not file their Complaint until December 9, 2010.

The Casinos argue that the statute should be equitably tolled because they were tricked by Defendants into letting the filing deadline pass and because they only recently learned about predatory lending practices from the national media. See Opp. at 20. Courts may toll the limitations period if the one-year rule would be unjust or would frustrate TILA's purpose. See King, 784 F.2d at 915. For example, if a borrower had no reason or

opportunity to discover the fraud or nondisclosures that form the basis of a borrower's TILA claim, the court may toll the statute of limitations. Id.; see also Huseman v. Icicle Seafoods, Inc., 471 F.3d 1116, 1120 (9th Cir. 2006) (explaining that tolling the statute of limitations is a factual determination that "focuses on whether there was excusable delay by the plaintiff and may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim").

The Casinos do not point to any specific information that was concealed or even allege any specific matter somehow prevented them from discovering any potential TILA claim. The acts of qualifying the Casinos for a loan they could not repay, failing to make disclosures, charging "exorbitant fees," and transferring the loan, do not suggest that Defendants sought to conceal information from the Casinos about what they were legally entitled to have received. It therefore appears that any TILA money damage claim arising out allegedly inaccurate or incomplete disclosures is time-barred as to Bank of America and MERS. Cf. Hubbard, 91 F.3d at 79 (denying equitable tolling because borrower had the ability to compare the initial disclosures she received with TILA's requirements and thereby learn that the loan disclosures were inadequate).

In considering the TILA damage claims against nonmoving Defendants First Magnus and Fidelity, this court takes a more

restrained approach to the statute of limitations issue than it
does with moving Defendants.  This is the same approach this
court took in its earlier decision in Asao.  Here, Bank of
America and MERS have placed the limitations issue squarely
before the court in their motion, which meets their burden with
respect to this affirmative defense.  The Casinos were obligated
to address this issue in response.  The other Defendants, by
contrast, have as of yet made no showing of carrying their burden
on this affirmative defense.

        This court hesitates to dismiss claims sua sponte in
reliance on an affirmative defense that has not been raised.  The
court concludes that, with respect to nonmoving Defendants, the
better course is either to allow the Casinos to be heard on the
issue via the issuance of an order to show cause why a claim
should not be dismissed for untimeliness, or to wait for other
Defendants to bring their own motion on the issue.  Although it
does appear to this court that the Casinos may face a limitations
problem with their TILA damage claim against nonmoving
Defendants, this court declines to dismiss sua sponte on the
limitations issue and opts to wait for a motion by Defendants
that have yet to move.  The court sees little likelihood that,
having failed to establish equitable tolling of the limitations
period with respect to Bank of America and MERS, the Casinos
could establish that equitable tolling overcomes the limitations

statute with respect to TILA damage claims against nonmoving Defendants. Still, to deny the Casinos the opportunity to make that attempt would be tantamount to requiring a plaintiff to include averments about equitable tolling in a complaint. Such a requirement would turn the concept of an affirmative defense on its head; it would require a plaintiff to address an affirmative defense before it was even raised by a defendant and would entirely erase a defendant's burden to assert and establish an affirmative defense.

The court, of course, is aware that any claim may be dismissed under Rule 12(b)6 on limitations grounds when that ground is "apparent on the face of the complaint." <u>Von Saher v. Norton Simon Museum of Art at Pasadena</u>, 592 F.3d 954, 969 (9th Cir. 2010). A <u>sua sponte</u> dismissal, however, does not have the benefit of the adversarial system contemplated by a motion brought under Rule 12(b)(6). This gives the court pause even though the court would apply Rule 12(b)(6) tenets to a <u>sua sponte</u> dismissal. Thus, the court notes that the Ninth Circuit was examining an element of a claim on which the plaintiff had the burden of proof when it said in <u>Omar</u> that a court may dismiss a claim <u>sua sponte</u> if "the claimant cannot possibly win relief. 813 F.2d at 991. As the limitations period is a matter on which a defendant bears the burden, this court does not here <u>sua sponte</u>

dismiss the damage claim against First Magnus and Fidelity on statute of limitations grounds.[6]

While not dismissed on limitations grounds, the Casinos' TILA damage claim against Fidelity is dismissed on another ground. It is clearly the Casinos' burden to show that TILA applies to Fidelity. Far from doing that, the Casinos plead facts that make it clear that Fidelity, which acted only as an escrow agent in the loan transaction, was not obligated to make TILA disclosures. See, e.g., Manuel, 2010 WL 2889510, at *3 (reasoning that because "neither [escrow holder nor loan servicer] was obligated to make TILA disclosures in connection with Plaintiffs' loan, neither party can be liable for violations of TILA"); In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig., 589 F. Supp. 2d 987, 992 (N.D. Ill. 2008) (dismissing TILA claims against escrow company on ground that TILA "imposes no such duty" on noncreditors and "TILA burdens only creditors with disclosure obligations") (citations omitted); Phleger v. Countrywide Home Loans, Inc., 2008 WL 65771, at *6 (N.D. Cal. Jan. 4, 2008) (dismissing TILA claim because "[a]n escrow agent is not . . . a creditor for purposes of TILA") (citations omitted).

---

[6]Nor does the court rely on Bank of America and MERS's argument that the Complaint fails to plead reliance. See Mot. at 21. Reliance is not a requirement to state a claim for statutory damages, which are available for the failure to make certain initial disclosures. See 15 U.S.C. § 1640.

Accordingly, the court GRANTS the motion to dismiss the Casinos' TILA claims as to Bank of America, MERS, and Fidelity. With respect to First Magnus, the court dismisses <u>sua sponte</u> the Casinos' rescission claim only, leaving the TILA damage claim against First Magnus in issue. <u>See</u> <u>Omar</u>, 813 F.2d at 991. The dismissal is with prejudice as to Fidelity and without prejudice as to Bank of America, MERS, and First Magnus.

      F.   <u>Count V (RESPA).</u>

The Casinos' RESPA claim is also subject to dismissal. The Complaint alleges that: (1) First Magnus received "egregious" fees for making the loan; and (2) the Casinos did not receive a "Special Information Booklet" explaining the settlement costs. Compl. ¶¶ 70-71. Without specifying any particular section of the statute, the Complaint asserts violations of 12 U.S.C. §§ 2601-2617. Compl. ¶ 67.

RESPA requires mortgage lenders to disclose the costs associated with real estate closings and prohibits sellers and lenders from engaging in certain practices during escrow and closing. <u>See</u> <u>Bloom v. Martin</u>, 77 F.3d 318, 320 (9th Cir. 1996); 12 U.S.C. §§ 2601-2610. One of its disclosure provisions requires lenders to provide to loan applicants, shortly after applying, a standardized "special information booklet" that discusses the settlement costs associated with the loan. <u>See</u> 12 U.S.C. § 2604; 24 C.F.R. § 3500.6. Defendants argue that the

Casinos have no private right of action for any alleged violation of § 2604.  See Mot. at 23-24.

This court has recently had occasion to consider whether RESPA creates a private right of action for the disclosure violations associated with failing to provide a special information booklet.  See Santiago v. Bismark Mortg. Co., LLC, Civ. No. 10-00467 SOM/KSC, 2011 WL 839762, at *5-*6 (D. Haw. Mar. 4, 2011).  The court considered the statutory language, as well as relevant precedent from the Ninth Circuit and other district courts within this circuit, and determined that no such private right of action exists.  See id.  Accordingly, for the reasons stated in Santiago, the Casinos may not assert a claim for their failure to receive a special information booklet.

The Casinos also appear to be asserting a RESPA claim under 12 U.S.C. § 2607 for illegal fees at closing.  To the extent Count V claims that Defendants received excessive fees, that claim under RESPA fails as a matter of law because § 2607 does not prohibit excessive fees, provided the fees were in exchange for real estate settlement services that were actually performed by the recipient.  See Martinez v. Wells Fargo Home Mortg., Inc., 598 F.3d 549, 553-54 (9th Cir. 2010) (concluding that, by prohibiting fees "other than for services actually performed," § 2607, "by negative implication, . . . cannot be

read to prohibit charging fees, excessive or otherwise, when those fees are for services that were actually performed").

The Casinos attach to their opposition brief declarations stating that Mr. Casino sent "a qualified written request to the lender" requesting various documents related to his mortgage, but never received a response. <u>See</u> Decl. Mariano C. Casino, Apr. 8, 2011, ECF No. 23-5 ("M. Casino Decl."); Decl. Estelita B. Casino, Apr. 8, 2011, ECF No. 23-6 ("E. Casino Decl."). They argue that these declarations establish a violation of § 2605 of RESPA, for which a private right of action exists. <u>See</u> Opp. at 17-18. They also argue that the lender (without naming a specific Defendant) "failed to a) provide them with a signed and dated copy of the Servicing Transfer disclosure, b) inform them it intended to securitize and sell the note to other lenders and loan services, and c) properly identify transfers of the note and mortgage, and d) properly identify who, if anyone is the holder in due course entitled to enforce the note and mortgage." Opp. at 18.[7] According to the Casinos, these actions all constitute violations of § 2605. Defendants respond that dismissal is nevertheless appropriate because these allegations are not in the Complaint, because § 2605 applies only

---

[7]The Opposition asserts that these allegations are contained in the Complaint, <u>see</u> Opp. at 18, but the court has located no such allegations in the RESPA count or elsewhere in the Complaint.

to requests for information related to loan servicing, not loan
origination, and because the Casinos fail to allege that they
suffered any actual damages.  Reply at 9-10.

The court need not decide whether the allegations set
forth in the Casinos' declarations would survive a motion to
dismiss because it is plain that none of these allegations
appears in the Casinos' Complaint.  The district court is not
permitted to look beyond the complaint to a plaintiff's papers in
deciding a motion to dismiss.  See Schneider v. Cal. Dep't of
Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (declining to
consider "new" allegations that would have allowed a complaint to
survive a motion to dismiss because the plaintiffs argued the new
facts for the first time in their opposition briefing).  The
court may, however, consider a plaintiff's opposition papers in
deciding whether to dismiss a complaint with prejudice.  See
Orion Tire Corp. v. Goodyear Tire & Rubber Co., 268 F.3d 1133,
1137-38 (9th Cir. 2001) (granting leave to amend because
opposition suggested amendment might be possible).

Accordingly, because the Complaint fails to state a
cause of action for violation of RESPA, but because the Casinos'
opposition suggests amendment is possible, the court GRANTS
Defendants' motion to dismiss the RESPA claim with leave to
amend.  The dismissal is as to all Defendants.  See Omar, 813
F.2d at 991.  By granting leave to amend, the court does not

intend to suggest that the proposed amendments will or will not survive any subsequent motion to dismiss that may be brought.

>    G.    Count VI (Rescission).

Count VI asserts that "Plaintiffs are entitled to rescind the loan for all of the foregoing reasons: 1) TILA Violations; 2) RESPA; 3) Fraudulent Concealment; 4) Deceptive Acts and Practices (UDAP) and 5) Public Policy Grounds, each of which provides independent grounds for relief." Compl. ¶ 74. As the court noted with respect to the remedies sought in Counts I and II, the remedy sought in Count VI (rescission) "is only a remedy, not a cause of action." Bischoff v. Cook, 118 Haw. 154, 163, 185 P.3d 902, 911 (Ct. App. 2008). The remedy thus "rises or falls with [the] other claims." Ballard, 2010 WL 5114952, at *8 (alteration in original). Indeed, as alleged here, Count VI specifically acknowledges that it is seeking rescission based upon "independent grounds for relief."

Accordingly, Count VI is DISMISSED without leave to amend. The court will address the merits of rescission when addressing any independent claim allowing rescission. The dismissal is as to all Defendants. See Omar, 813 F.2d at 991.

>    H.    Count VII (Unfair and Deceptive Acts and
>           Practices).

Count VII alleges that all Defendants are liable for Unfair and Deceptive Acts and Practices "by consummating an unlawful, unfair, and fraudulent business practice, designed to

deprive Plaintiffs of her [sic] home, equity, as well as her [sic] past and future investment." Compl. ¶ 81. The Casinos allege that Defendants "failed to undergo a diligent underwriting process," failed to disclose matters, should not have approved the loan because they could not afford it, and had "knowledge of these facts, circumstances and risks but failed to disclose them." Id. ¶ 79. Count VII appears to be brought under Hawaii's UDAP law, section 480-2(a) of Hawaii Revised Statutes, which states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

The Casinos do not state a claim under section 480-2 of the Hawaii Revised Statutes because "lenders generally owe no duty to a borrower 'not to place borrowers in a loan even where there was a foreseeable risk borrowers would be unable to repay.'" McCarty v. GCP Mgmt., LLC, 2010 WL 4812763, at *6 (D. Haw. Nov. 17, 2010) (quoting Champlaie v. BAC Home Loans Servicing, LP, 706 F. Supp. 2d 1029, 1061 (E.D. Cal. 2009)). See also Sheets v. DHI Mortg. Co., 2009 WL 2171085, at *4 (E.D. Cal. July 20, 2009) (reasoning that no duty exists "for a lender 'to determine the borrower's ability to repay the loan. . . . The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the

borrower's.'" (quoting <u>Renteria v. United States</u>, 452 F. Supp. 2d
910, 922-23 (D. Ariz. 2006)).

"[A]s a general rule, a financial institution owes no
duty of care to a borrower when the institution's involvement in
the loan transaction does not exceed the scope of its
conventional role as a mere lender of money." <u>Nymark v. Heart</u>
<u>Fed. Sav. & Loan Ass'n</u>, 283 Cal. Rptr. 53, 56 (Cal. Ct. App.
1991). Nothing in the Complaint indicates that any Defendant
"exceed[ed] the scope of [a] conventional role as a mere lender
of money." The claims fail on that basis alone. The court,
however, cannot conclude at this time that further amendment is
futile and allows the Casinos an opportunity to amend Count VII
to attempt to state a section 480-2 claim.

Count VII is DISMISSED with leave to amend as to all
Defendants. <u>See</u> <u>Omar</u>, 813 F.2d at 991.

I.   <u>Count VIII (Breach of Fiduciary Duty).</u>

Count VIII alleges, without distinguishing between
various Defendants, that "Defendants owed a fiduciary duty to
Plaintiffs and breached that duty by [f]ailing to advise or
notify Plaintiffs . . . that Plaintiffs would or had a likelihood
of defaulting on the loan." Compl. ¶ 84. Defendants also
allegedly breached a fiduciary duty owed to the Casinos by
"exercis[ing] a greater level of loyalty to each other by
providing each other with financial advantages under the loan

31

without disclosing their relation to one another" Id. ¶ 85. The Casinos also allege that the failure to provide material disclosures "while in the capacity of Plaintiff's Lender" and "fail[ure] to fully comply with TILA and RESPA" violated Defendants' fiduciary duties. Id. ¶¶ 86-87.

Count VIII fails to state a claim against the lender Defendants, including Bank of America and MERS. As noted earlier, McCarty held that a borrower-lender relationship is not fiduciary in nature:

> Lenders generally owe no fiduciary duties to their borrowers. See, e.g., Spencer v. DHI Mortg. Co., 642 F. Supp. 2d 1153, 1161 (E.D. Cal. 2009) ("Absent 'special circumstances' a loan transaction 'is at arms-length and there is no fiduciary relationship between the borrower and lender.'") (quoting Oaks Mgmt. Corp. v. Super. Ct., 51 Cal. Rptr. 3d 561 (Cal. Ct. App. 2006)); Ellipso, Inc. v. Mann, 541 F. Supp. 2d 365, 373 (D.D.C. 2008) ("[T]he relationship between a debtor and a creditor is ordinarily a contractual relationship . . . and is not fiduciary in nature.") (citation omitted); Nymark v. Heart Fed. Sav. & Loan Ass'n, 283 Cal. Rptr. 53, 54 n.1 (Cal. Ct. App. 1991) ("The relationship between a lending institution and its borrower-client is not fiduciary in nature.").

McCarty, 2010 WL 4812763, at *5.

The allegations also fail to state a claim against Fidelity, the title and escrow company Defendant. The "[g]eneral rule is that [an] escrow depository occupies [a] fiduciary relationship with parties to [the] escrow agreement or

instructions and must comply strictly with the provisions of such agreement or instructions." Stanton v. Bank of Am., N.A., 2010 WL 4176375, at *3 (D. Haw. Oct. 19, 2010) (quoting DeMello v. Home Escrow, Inc., 4 Haw. App. 41, 47, 659 P.2d 759, 763 (Ct. App. 1983) (citation omitted)). But "an escrow holder has no general duty to police the affairs of its depositors; rather, an escrow holder's obligations are limited to faithful compliance with [the depositors'] instructions." Id. (quoting Summit Fin. Holdings, Ltd. v. Continental Lawyers Title Co., 27 Cal. 4th 705, 711 (Cal. 2002)). The Hawaii Supreme Court has found that, when a party to a transaction in which an escrow is utilized engages in fraudulent activity, the escrow entity is not liable when it acts in good faith and does not have actual knowledge of wrongdoing. Matter of Bishop, Baldwin, Rewald, Dillingham & Wong, Inc., 69 Haw. 523, 529, 751 P.2d 77, 78, 81 (1988). The Complaint includes no allegations supporting a breach by Fidelity of any fiduciary duty owed to the Casinos. For example, the Casinos do not allege that Fidelity failed to follow the provisions of any particular agreement or instruction.

Count VIII is DISMISSED with leave to amend as to all Defendants.

    J.    Count IX (Unconscionability).

Count IX asserts "Unconscionability-UCC-2-3202 [sic 2-302]." Count IX further asserts that courts may refuse to

33

enforce a contract or portions of a contract that are
unconscionable, Compl. ¶ 89, and that courts are to give parties
an opportunity to present evidence regarding a contract's
"commercial setting, purpose and effect" to determine if a
contract is unconscionable.  Id. ¶ 90.  It goes on to allege:

> Here, based on the deception, unfair
> bargaining position, lack of adherence to the
> regulations, civil codes and federal
> standards that the Defendants were require[d]
> to follow; coupled with the windfall that the
> Defendants reaped financially from their
> predatory practices upon Plaintiff[]s, the
> court may find that the loan agreement and
> trust deed are unconscionable and of no force
> or effect.

Id. ¶ 91.

    Unconscionability is generally a defense to the
enforcement of a contract, not a proper claim for affirmative
relief.  See, e.g., Gaitan v. Mortg. Elec. Registration Sys.,
2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009)
("Unconscionability may be raised as a defense in a contract
claim, or as a legal argument in support of some other claim, but
it does not constitute a claim on its own."); see also Barnard v.
Home Depot U.S.A., Inc., 2006 WL 3063430, at *3 n.3 (W.D. Tex.
Oct. 27, 2006) (citing numerous cases for the proposition that
neither the common law nor the Uniform Commercial Code allows
affirmative relief for unconscionability).

    To the extent unconscionability can be addressed
affirmatively as part of a different or independent cause of

action, such a claim "is asserted to prevent the enforcement of a contract whose terms are unconscionable." Skaggs v. HSBC Bank USA, N.A., 2010 WL 5390127, at *3 (D. Haw. Dec. 22, 2010) (emphasis in original).[8] Skaggs dismissed a "claim" for unconscionability because it challenged only conduct such as "obtaining mortgages under false pretenses and by charging Plaintiff inflated and unnecessary charges," and "failing to give Plaintiff required documents in a timely manner," but not the breach of any specific contractual term. Id. Count IX similarly fails to identify or challenge any particular contract term as unconscionable.

Count IX is DISMISSED with leave to amend. This dismissal is as to all Defendants. See Omar, 813 F.2d at 991.

K.    Count X (Predatory Lending).

Count X asserts "Predatory Lending" and lists a variety of alleged wrongs (e.g., failure to disclose terms and conditions

---

[8] In Skaggs, the court noted in dicta that "at least one Hawaii court has addressed unconscionability when raised as a claim seeking rescission." 2010 WL 5390127, at *3 n.2 (citing Thompson v. AIG Haw. Ins. Co., 111 Haw. 413, 142 P.3d 277 (2006)). This was not an indication that one could raise an affirmative claim for "unconscionability." Indeed, in Thompson, the complaint did not assert a separate count for rescission or unconscionability. See Thompson, 111 Haw. at 417, 142 P.3d at 281 (indicating that the specific counts were for negligence, fraud, breach of duty, and unfair and deceptive trade practices under Haw. Rev. Stat. § 480-2). In Thompson, the remedy of rescission was based on an independent claim. Similarly, a remedy for an unconscionable contract may be possible; a stand-alone claim asserting only "unconscionability," however, is improper. See, e.g., Gaitan, 2009 WL 3244729, at *13.

or material facts, targeting of unsophisticated persons, unfair loan terms, and improper underwriting) that form the bases of other causes of action.  Compl. ¶¶ 92-105.

The common law does not support a claim for "predatory lending."  See Haidar v. BAC Home Loans Servicing, LP, 2010 WL 3259844, at *2 (E.D. Mich. Aug. 18, 2010) (agreeing that "there is no cause of action for predatory lending"); Pham v. Bank of Am., N.A., 2010 WL 3184263, at *4 (N.D. Cal. Aug. 11, 2010) ("There is no common law claim for predatory lending").  To the extent such "predatory" practices provide a claim for relief, they appear to be grounded in statutes or other common-law causes of action such as fraud.  The term "predatory lending" is otherwise too broad.  See Vissuet v. Indymac Mortg. Servs., 2010 WL 1031013, at *3 (S.D. Cal. Mar. 19, 2010) (dismissing claim for "predatory lending" with leave to amend and noting that the term is expansive and fails to provide proper notice, leaving defendants "to guess whether this cause of action is based on an alleged violation of federal law, state law, common law, or some combination"); see also Hambrick v. Bear Stearns Residential Mortg., 2008 WL 5132047, at *2 (N.D. Miss. Dec. 5, 2008) (dismissing a claim for predatory lending that failed to cite any "[state] or applicable federal law, precedential or statutory, creating a cause of action for 'predatory lending.'").

Count X fails to state a cause of action.  This does
not, of course, mean that "predatory lending" cannot form the
basis of some cause of action.  Instead, the dismissal signifies
that Hawaii courts have not recognized "predatory lending" itself
as a common law cause of action.  The ambiguous term "predatory
lending" potentially encompasses a wide variety of alleged
wrongdoing.  The cause of action pled here fails to provide
notice to any Defendant of what is being claimed.  See Vissuet,
2010 WL 1031013, at *3.

Count X is DISMISSED with leave to amend as to all
Defendants except Fidelity.  The Casinos may attempt to state a
cause of action based on specific activities (which might be
described as "predatory") provided that any new predatory lending
claim is based on a recognized statutory or common law theory.
In other words, the Casinos may not simply reallege a general
claim for "predatory lending."  The dismissal as to Fidelity is
without leave to amend because the Casinos recognize that
Fidelity acted as an escrow agent.  An escrow agent is not a
lender, and Fidelity therefore cannot have engaged in lending,
predatory or otherwise.

L.    Count XI (Quiet Title).

Count XI alleges that Defendants have "no legal or
equitable right, claim, or interest in the Property," Compl.
¶ 108, and that the Casinos are entitled to a declaration that

37

"the title to the Subject Property is vested in Plaintiff's [sic] alone." Id. ¶ 109.

The Casinos appear to be making a claim under section 669-1(a) of Hawaii Revised Statutes. That statute provides that a quiet title "[a]ction may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim." The Casinos have not alleged sufficient facts regarding the interests of various parties to make out a cognizable claim for "quiet title." They has merely alleged elements of section 669-1 without stating a claim. See Iqbal, 129 S. Ct. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient.).

As to Fidelity, the Casinos cannot state a cognizable claim against Fidelity for quiet title because they do not even allege that Fidelity, as an escrow agent, is asserting any right to the subject property. Accordingly, Count XI is DISMISSED with leave to amend as to all Defendants except Fidelity.

> M.   Count XII (Lack of Standing; Improper Fictitious Entity).

Count XII asserts a claim for "Lack of Standing; Improper Fictitious Entity" against MERS. Compl. ¶¶ 110-17. Count XII fails to state a claim because a claim for "lack of standing" may not be alleged against a defendant. Rather,

38

standing is a requirement for a *plaintiff* in order to proceed in a civil lawsuit.  See generally Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (explaining requirements for plaintiffs to establish constitutional standing); Lake Washington Sch. Dist. No. 414 v. Office of Superintendent of Pub. Instruction, 634 F.3d 1065, 1067-68 (9th Cir. 2011) (explaining that plaintiffs must also establish statutory standing, when applicable).

Count XII alleges generally that MERS is an artificial entity that is "designed to circumvent certain laws and other legal requirements dealing with mortgage loans."  Compl. ¶ 113. Plaintiffs assert that an assignment of the note or mortgage to MERS is illegal, id. ¶ 114, and that therefore "MERS has no legal standing to foreclose."  Id. ¶ 117.  The Casinos appear to be alleging that MERS may not foreclose (or has improperly foreclosed) because it is not a holder of the note.  If this is the purpose of Count XII, the court will allow the Casinos an opportunity to clarify the factual allegations as to MERS.  The Casinos may, if appropriate, attempt in an Amended Complaint to assert alleged illegalities as to MERS's status in an independent cause of action, but not based on "Lack of Standing; Improper Fictitious Entity."  Accordingly, Count XII is DISMISSED with leave to amend as to MERS only.

V.      <u>CONCLUSION.</u>

For the reasons stated above, the court GRANTS Bank of America and MERS's motion to dismiss as to all Counts.  The court dismisses all Counts <u>sua sponte</u> with respect to Fidelity, and all Counts except Count IV with respect to First Magnus.  With respect to all Defendants, the Casinos are granted leave to amend part of Count V (not including "excessive" fee claims or claims made under 12 U.S.C. § 2604), and the entirety of Counts VII (for unfair and deceptive trade practices), VIII, and IX.  The Casinos may also bring a separate claim for fraud.  The Casinos are further granted leave to amend Counts IV, X, and XI as to all Defendants except Fidelity, and may amend Count XII as to MERS.

Counts I, II, III, and part of Count V (for "excessive" fees and for any claim under 12 U.S.C. § 2604), as well as all of Count VI, are DISMISSED without leave to amend.  Any Amended Complaint must be filed not later than 14 days after the date this order is filed.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 4, 2011.



 /s/ Susan Oki Mollway 
Susan Oki Mollway
Chief United States District Judge

<u>Casino v. Bank of America</u>; Civil No. 10-00728 SOM/BMK; ORDER GRANTING DEFENDANTS' BANK OF AMERICA, N.A., AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION TO DISMISS AND PARTIALLY DISMISSING CLAIMS AGAINST NONMOVING DEFENDANTS SUA SPONTE.

40